UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIA L. GUYLER,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 09-546 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Marcia L. Guyler filed this action on March 27, 2009. Pursuant to 28 U.S.C. § 636(c), the parties filed Statements of Consent to proceed before Magistrate Judge Rosenberg on April 7 and 13, 2009. (Dkt. Nos. 8-9.) On October 20, 2009, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Commissioner filed the Certified Administrative Record ("AR"). The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the Commissioner's decision.

///

///

///

**I.**

**PROCEDURAL BACKGROUND**

On April 12, 2006, Guyler filed an application for supplemental security income benefits. AR 8. The application was denied initially and upon reconsideration. AR 54-57. Guyler requested a hearing. AR 71. The Administrative Law Judge ("ALJ") conducted a hearing on May 7, 2008. AR 22-53. On May 30, 2008, the ALJ issued a decision denying benefits. AR 5-14. Guyler filed a request for review. AR 79. On February 13, 2009, the Appeals Council denied the request for review. AR 1-4. This lawsuit followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///
///

## III.
## DISCUSSION

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### A. The ALJ's Findings

The ALJ found that Guyler had the following severe impairments: "polyarthralgias; degenerative disc disease; and osteoarthritis." AR 10. Guyler had the residual functional capacity to perform a range of light work as follows: "able to lift and/or carry 20 pounds occasionally and ten pounds frequently; able to stand and/or walk for two hours at one time for a total of four hours during an eight-hour workday; able to sit for four hours total during an eight-hour workday; cannot work on unprotected heights; must avoid extreme cold; cannot balance or crawl; cannot perform forceful gripping; and cannot climb, stoop, kneel, or crouch on more than an occasional basis." *Id.* Guyler could not perform her past relevant work, but "there are jobs that exist in significant numbers in the national economy that [she] can perform," such as information clerk, inspector, or cashier II. AR 13.

### B. Whether the Claimant Met or Equaled a Listing

At Step Three, the claimant bears the burden of demonstrating that her impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is

conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(4)(iii), 416.920(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (citation omitted). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1526. "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100 (citation omitted).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ found that Guyler's impairments were "not associated with the functional limitations and objective findings required of any impairment listed in Section 1.00." AR 10. The ALJ reviewed the medical evidence, and cited the state agency physician's opinions. AR 10-12, 181-186, 209-212; Social Security

Ruling (SSR) 96-6p,[1] 1996 SSR LEXIS 3, *9 ("When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.").

Guyler argues that she meets or equals Listing 1.04A based on examining physician Dr. Zamiri's opinion. JS 10. Listing 1.04A requires a spine disorder resulting in compromise of a nerve root or spinal cord accompanied by (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) with sensory or reflex loss; and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.[2]

Contrary to Guyler's argument, Dr. Zamiri's opinion does not provide substantial evidence that she meets or equals the criteria for listing 1.04A. Dr. Zamiri diagnosed degenerative disk disease of the lumbar spine. AR 180. Dr. Zamiri noted positive supine and seated straight leg raising, "which can point to her herniated disk" or "which indicates the *possible* nerve involvement in the lumbar area." AR 179, 180 (emphasis added). Dr. Zamiri also found: "Neck

---

[1] "Social Security rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[2] 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: [¶] A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

range of motion is intact in all planes." AR 179. "No muscle atrophy is noted." *Id.* Guyler has "no sensory or motor deficit." *Id.* Range of motion in the cervical spine was normal. With respect to the thoracolumbar spine, forward flexion and extension was normal; however, lateral flexion was diminished at 10 degrees and rotation was diminished at 10 degrees. *Id.*

Nor does Dr. Zamiri's opinion establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of listing 1.04A. Dr. Zamiri found that Guyler could stand or walk less than six hours in an eight-hour workday, and could sit less than six hours in an eight-hour workday. Guyler could lift and carry both frequently and occasionally between ten and twenty pounds. Dr. Zamiri found no manipulative limitations in reaching, handling, feeling, grasping, and fingering. AR 180. Guyler testified she drove to the hearing from San Bernardino and, two months prior, obtained her pharmacy tech certificate after attending school five days per week (20 hours per week) and completing 1.5 hours of homework per day. AR 26-27. She goes for walks with her 11-year-old. AR 33. She has no difficulty working on a computer. AR 37. She was actively looking for work but "[n]obody's hiring right now." AR 27, 34.

Guyler also argues that the ALJ's finding was insufficient to support the conclusion that she did not meet or equal a listing. The ALJ reviewed the medical evidence. AR 10-12. The ALJ found that Guyler has the residual functional capacity to stand and/or walk for two hours at one time for a total of four hours during an eight-hour workday; to lift and/or carry 20 pounds occasionally and ten pounds frequently; and to sit for four hours total in an eight-hour workday. AR 10. In rejecting a similar argument that the Commissioner erred by failing to discuss why a claimant did not satisfy the Listing of Impairments, the Ninth Circuit held that "[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). The court found that

the ALJ's summary of the medical evidence and the claimant's testimony was sufficient, even though the ALJ did not state what evidence supported the conclusion that the impairments did not meet or equal the listings. *Id.* at 1200-01. "To require the ALJ's to improve their literary skills in this instance would unduly burden the social security disability process." *Id.* at 1201; *see also Lewis*, 236 F.3d at 513 (ALJ need not discuss and evaluate evidence that supports his or her conclusion under a specific heading). In addition, Guyler does not present any evidence that she argued to the ALJ that listing 1.04A was met or equaled in this case. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). The ALJ did not err.

### C. Examining Physician

An examining physician's opinion may serve as substantial evidence when it is supported by independent clinical findings. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An ALJ may reject an uncontradicted examining physician's medical opinion based on "clear and convincing reasons." *Carmickle v. Comm'r,* 533 F.3d 1155, 1164 (9th Cir. 2008). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* at 1164 (citation omitted).

Guyler argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Zamiri's evaluation. However, the ALJ specifically addressed Dr. Zamiri's evaluation, and found that "the limitations established herein are not inconsistent with his findings." AR 12. As the ALJ noted, Dr. Zamiri concluded that Guyler "could stand or walk for less than six hours during an eight-hour workday, sit for less than six hours during an eight-hour workday, and lift between ten and 20 pounds." AR 12, 180. Guyler does not identify any inconsistency

between the ALJ's residual functional capacity assessment and Dr. Zamiri's functional limitations. When, as here, an ALJ does not reject an examining physician's opinion, the ALJ is not required to set forth specific and legitimate reasons. *See Matthews v. Shalala*, 10 F.3d 678, 680-81 (9th Cir. 1993).

### D. Obesity

Guyler argues that the evidence in the record indicates she is 5'4" and weighs 192 pounds; yet, the ALJ did not consider obesity in determining her residual functional capacity. The Ninth Circuit has addressed an ALJ's duty when a claimant does not expressly raise obesity. *Burch*, 400 F.3d at 682. Even assuming the ALJ erred by failing to find obesity a severe impairment at Step Two, the claimant could be prejudiced only at Step Three (listing impairment) or Step Five because Step Four was resolved in the claimant's favor. *Id.*

The court in *Burch* found the ALJ did not err in finding that the claimant's impairments did not meet or equal a listed impairment. The court noted an ALJ "'will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.'" *Id.* (citation omitted). Accordingly, an ALJ evaluates a case "'based on the information in the case record.'" *Id.* (citation and emphasis omitted). At Step Three, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Id.* at 683. Moreover, "'[t]he medical record [was] silent as to whether and how claimant's obesity might have exacerbated her condition.'" *Id.* (citation omitted).

The court further found that the ALJ did not err at Step Five. "Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider." *Id.* at 684.

8

Just as in *Burch*, Guyler was represented by counsel at the hearing. AR 24. Guyler did not make any effort to argue equivalence to a listed impairment. The medical record is silent as to whether and how obesity might exacerbate Guyler's condition. None of the records address any limitations due to obesity, alone or in combination with other impairments. On this record, the ALJ did not err in failing to consider obesity at Step Three. *Burch*, 400 F.3d at 683.

Similarly, there is no evidence in the medical record as to any functional limitations as a result of obesity that the ALJ did not consider at Step Five. *Id.* at 684. As discussed above, the ALJ considered the functional limitations assessed by Dr. Zamiri. To the extent Guyler argues the ALJ should have done more to develop the record, her argument is foreclosed by *Burch*. *Id.* at 682-84.

### E. Side Effects

Guyler argues the ALJ failed to consider that taking Naprosyn makes her drowsy. The ALJ acknowledged that Guyler claimed she could not work due, in part, to the fact that Naprosyn made her drowsy. AR 11. The ALJ found, however, that her statements "do not establish an inability to perform work within the residual functional capacity assessed herein for the reasons explained below." *Id.* In the following paragraph, the ALJ relied on Guyler's testimony that she worked 20 hours per week preparing food for a school district until May 21, 2007, and then started a nine-month program to obtain a pharmacy technician certificate on May 23, 2007. AR 11, 28. She received the certificate in March 2008. AR 11, 26, 37. Guyler testified that the pharmacy technician program required her to attend classes five days per week, four hours per day, plus 1.5 hours of homework per night. AR 11, 26-27. She completed two internships in two different pharmacies, and each internship required 120 hours of work, eight hours per day, five days a week. AR 11, 34-36. Guyler testified that she is actively seeking employment but "[n]obody's hiring right now." AR 11, 27. Pharmacy work allowed her to sit, stand, and walk. AR 12, 30, 35-36. She has

no difficulty working on a computer.  AR 11, 37.  On the basis of this record, the ALJ could reasonably conclude that Guyler was able to work on a sustained basis even while taking Naprosyn.  The ALJ did not err.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 17, 2010

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

10